IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BERNARD A. CLINE,

    Petitioner,

v.                                              Case No. 5:14-CV-3159-JTM

WARDEN DAN SCHNURR,

    Respondent.

**MEMORANDUM AND ORDER**

The court previously screened petitioner Bernard A. Cline's pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and entered an Order to Show Cause ordering respondent to show cause as to why the writ should not be granted. Dkt. 4. In his Response, respondent argued that the petition had been filed out of time and, absent application of equitable tolling, should be dismissed as untimely. Having considered all the materials in the file, the court agrees.

**I.    Procedural History and Background**

The following is an account of the facts of this case as determined by the Kansas Supreme Court.[1]

> After work on Friday, September 21, 2007, Richard Carter went to Bernard Cline's home to help erect a tent for Cline's birthday celebration, which was scheduled for the following day. After setting up the tent, Carter went up to Cline's apartment. While Carter was drinking a beer on the balcony outside Cline's apartment with Cline's girlfriend, Vernadine Releford, Cline was playing with a remote control car in the street visible from the balcony.
>
> Cline walked up the stairs to Carter, and they talked about the remote control car. Cline abruptly told Carter, "I'm going to kill that mother fucker." When Carter asked for clarification, Cline pointed to his neighbor, Raymond Gutierrez, who

---

[1] State court factual findings are presumptively correct and may be rebutted only by "clear and convincing evidence." *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

was nearby on the balcony. Cline told Carter that Gutierrez had been stealing his electricity.

Cline went into his apartment and returned with a .22 caliber rifle, which was missing the stock. Cline ducked back into the apartment for a couple seconds, stepped out again, and shot Gutierrez. Gutierrez was sitting in a chair on the balcony approximately 5 feet away, texting on his cell phone, when he was shot in the back of the head.

Carter testified that Cline went back into the apartment and returned to the balcony without the rifle. Releford stood up and asked Cline what he had done or why he had shot the neighbor, but Cline did not answer her questions. Carter asked Cline similar questions, but Cline only replied that he had not done anything. Carter testified that Cline "took off down the steps" after their brief conversation. Carter asked neighbors to call the police, but someone was using their telephone. Carter ran toward his own apartment to call the police himself but turned around and returned to the scene when he heard sirens and saw the flashing lights of emergency vehicles.

Carter spoke to the first police officer he saw, telling the officer where the paramedics were needed. He initially hesitated when asked if he had seen what happened but soon told the officer what he had observed. He later went with police to headquarters and gave a complete statement. About 2 hours after going to sleep, around 4 a.m., Carter received a telephone call from Cline, who was in jail. The recorded call, the content of which was generally consistent with Carter's testimony and Cline's statement to the police, was admitted at trial.

Officers found a .22 caliber rifle, missing the stock, under the bed in the bedroom of Cline's apartment. Even without the missing pieces (the "butt stock assembly," the "return spring," and the "return spring guide"), 6 pounds of trigger pull was required to fire the rifle, which put it within the acceptable limits for this type of weapon. A KBI forensic expert on firearms identification testified that any firearm that requires less than 2 pounds of trigger pull is an extremely light trigger, which requires special care in handling to prevent accidental discharges during testing.

Gutierrez died on September 24, 2007, 3 days after the shooting. The deputy coroner testified that the cause of Gutierrez' death was the gunshot wound to the head. Gutierrez also had minor injuries to his forehead and lower lip that the deputy coroner classified as acute injuries, or injuries that occurred relatively close in time to the gunshot wound.

Cline testified that he was high on PCP, to the point that he was in an altered reality, when he shot Gutierrez. He stated that, at the time of the shooting, he had believed that Gutierrez was somehow stealing his electricity. Cline said that he dropped the .22 caliber rifle in his room, left the apartment, and drove to his

2

> mother's house. Cline was arrested shortly after the shooting at his mother's house.
>
> Additional trial facts are included in the analysis of each issue. The jury found Cline guilty of premeditated first-degree murder. Cline was sentenced to life imprisonment, without possibility of parole for 25 years. Cline timely appealed.

*State v. Cline*, 295 Kan. 104, 283 P.3d 194, 196-97 (Kan. 2012). On August 17, 2012, the Kansas Supreme Court affirmed petitioner's conviction for first degree murder. *Id.* at 202. Nearly one year later, on August 5, 2013, petitioner filed a motion for post-conviction relief challenging the constitutionality of his conviction pursuant to K.S.A. § 60-1507. On January 15, 2014, the district court denied petitioner's motion. Petitioner did not appeal this decision.

On August 27, 2014, petitioner filed an application for federal habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Kansas. In his petition, petitioner alleges only one assignment of error, that he asserted his right to remain silent and yet the police "pressed on." Dkt. 1, at 5. On October 22, 2014, the court ordered respondent to show cause as to why petitioner's writ should not be granted. In his Response, respondent argues that petitioner's entire petition has been submitted out of time. Dkt. 15. Petitioner did not file a reply.

### III.   Discussion

The statute of limitations for filing a federal habeas corpus petition is set forth in 28 U.S.C. § 2244(d)(1): "A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." The "limitation period shall run from" the "latest of" four dates, including "the date on which the judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A statutory exception exists in that the "time during which

a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." 28 U.S.C. § 2244(d)(2).

Under § 2244(d)(1)(A), "a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until – following a decision by the state court of last resort – 'after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed." *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (quoting *Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999)).

Given these statutory guidelines, it appears that, without additional tolling, petitioner's federal habeas petition is time-barred.

Petitioner's conviction was affirmed by the Kansas Supreme Court on August 17, 2012. Petitioner did not thereafter seek certiorari from the United States Supreme Court. As such, petitioner's conviction became final 90 days after the Kansas Supreme Court's decision, on November 15, 2012. The statute of limitations therefore began to run and ran uninterrupted for 353 days, until petitioner filed his motion for post-conviction relief on August 5, 2013. The district court denied relief on petitioner's post-conviction motion on January 14, 2014, and no appeal was taken. Pursuant to Kansas law, that denial became final thirty (30) days later, on February 13, 2014. *See* K.S.A. § 60-2103(a) ("When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be 30 days from the entry of the judgment . . . ."). The statute of limitations therefore resumed running on January 15, 2014, and ran for twelve (12) days until it expired on February 25, 2014.

Petitioner filed his pending application for federal habeas relief on August 27, 2014, more than six months after this expiration date. Accordingly, petitioner's federal habeas petition is time-barred.

Although not specifically alleged, the court performs an analysis to determine whether petitioner's late filing is entitled to equitable tolling. A litigant claiming entitlement to equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Gant v. Cline*, 2013 U.S. Dist. LEXIS 152812, at *9 (D. Kan. Oct. 24, 2013) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). In the habeas context, equitable tolling has been limited to "rare and exceptional circumstances." *Id.* (quoting *Gibson v. Klinger*, 232 F.3d 799, 800 (10th Cir. 2000)). The Tenth Circuit has stated that equitable tolling "would be appropriate, for example, where a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstance—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Id*. (quoting *Gibson*, 232 F.3d at 800); *see also Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003). "Simple excusable neglect is not sufficient." *Gant*, 2013 U.S. Dist. LEXIS 152812, at *10 (quoting *Gibson*, 232 F.3d at 808).

Here, petitioner provides two potential grounds for equitable tolling (although they are not presented as such): (1) the journal entry of the Appellate Court's decision denying his motion for post-conviction relief was not entered until January 15, 2014, and (2) the petition is petitioner's first filing without the aid of counsel and he cannot read or write. Dkt. 1, at 4, 13. The first justification fails: petitioner allowed 353 days to pass without filing a federal petition for habeas relief *before* he filed a motion for post-conviction relief. Moreover, petitioner still

had 42 days *after* the district court entered its denial in which to file such a motion. He failed to do so.

The second justification, i.e., that the pending petition is petitioner's first filing without counsel also fails. "It is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *United States v. Escarcega*, 2012 U.S. Dist. LEXIS 92608, at *6 (D. Kan. July 5, 2012) (quoting *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)). While petitioner's illiteracy is of some concern, especially since it was confirmed in petitioner's pre-trial competency evaluation, the Tenth Circuit has addressed, and rejected such a justification. "A prisoner's illiteracy is insufficient to toll the statute of limitations." *Rawlins v. Newton-Embry*, 352 Fed. Appx. 273, 275 (10th Cir. 2009) (citing *Yang v. Archuleta*, 525 F.3d 925, 929-30 n.7 (10th Cir. 2008)).

Moreover, petitioner's own filing somewhat belies his assertion of illiteracy, as it only states that he has an inmate assisting him "who is not a lawyer." Dkt. 1, at 4. There is no indication in his petition that the form was actually *filled out* by another inmate. Additionally, there is no indication in the record that petitioner undertook any efforts to overcome his disabilities by timely alternative means.

Accordingly, the court declines to grant petitioner the benefit of equitable tolling.

**IT IS THEREFORE ORDERED**, this 19th day of October, 2015, that petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 1) is hereby dismissed as time-barred and that a certificate of appealability is denied.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE